1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

11   JENNIFER ANNE CHILL,

Case No. CV 15-03558 PSG (AFM)

12                    Petitioner,

13        v.

**FINAL REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

14   KIMBERLY HUGHES, Warden,

15

16                    Respondent.

17

18        This Final Report and Recommendation is submitted to the Honorable

19   Philip S. Gutierrez, United States District Judge, pursuant to the provisions of 28

20   U.S.C. § 636 and General Order 05-07 of the United States District Court for the

21   Central District of California.

22

23                        **INTRODUCTION**

24        On May 12, 2015, petitioner filed a Petition for Writ of Habeas Corpus by a

25   Person in State Custody (28 U.S.C. § 2254).  The operative pleading is the First

26   Amended Petition filed by petitioner on December 16, 2015.  Petitioner raises four

27   grounds for habeas relief, directed to her conviction of vehicular manslaughter

28   while intoxicated and related offenses.

Respondent filed an Answer on May 20, 2016. Petitioner filed a Reply on August 2, 2016.

For the reasons discussed below, the Court recommends that the First Amended Petition be denied and that this action be dismissed with prejudice.

**PROCEDURAL HISTORY**

On November 21, 2011, a San Luis Obispo County Superior Court jury found petitioner guilty of vehicular manslaughter while intoxicated, driving under the influence of alcohol or drugs causing injury, and driving with a .08 percent blood alcohol concentration or greater causing injury. The jury also found true the allegations that petitioner personally inflicted great bodily injury and caused death or bodily injury to more than one victim. Petitioner was sentenced to state prison for seven years. (14 Reporter's Transcript ["RT"] 3907-09; 17 RT 4804; 1 Clerk's Transcript ["CT"] 204-10; 2 CT 307.)

Petitioner appealed, raising federal claims corresponding to Grounds One, Three, and Four of the First Amended Petition. (Respondent's notice of lodging, Lodgment 2.) Petitioner raised her remaining claim in Ground Two — erroneous response to the jury's question — as only a state law claim on direct appeal. (*Id.*) In an unpublished decision issued on March 18, 2014, the California Court of Appeal rejected the claims and affirmed the judgment. (Lodgment 4.) Petitioner then raised the same claims in a Petition for Review in the California Supreme Court. (Lodgment 5.) On June 18, 2014, the California Supreme Court summarily denied the Petition for Review. (Lodgment 6.)

On May 12, 2015, petitioner filed (through counsel) a Petition for Writ of Habeas Corpus by a Person in State Custody. On July 7, 2015, respondent filed a Motion to Dismiss the Petition because Ground Two had not been fairly presented as a federal claim in the state courts and therefore was unexhausted. The

1    previously-assigned Magistrate Judge ordered petitioner to file a response
2    addressing the exhaustion issue and denied the Motion as moot.

3          On July 21, 2015, this case was transferred to the calendar of the undersigned
4    Magistrate Judge.

5          On August 3, 2015, petitioner filed a response to the exhaustion issue in
6    which she (1) argued that Ground Two was exhausted; (2) in the alternative
7    requested a stay of the Petition while she returned to state court to exhaust Ground
8    Two as a federal claim.  On September 10, 2015, the Court issued an order advising
9    petitioner that it appeared Ground Two was unexhausted, but that nothing
10   precluded her from requesting that the Petition be held in abeyance under the
11   procedure set out in *Kelly v. Small*, 315 F.3d 1063 (9th Cir. 2003).  The Court
12   incorporated these findings in a Report and Recommendation issued on
13   December 8, 2015.

14         In the interim, petitioner filed a habeas petition in the California Supreme
15   Court, in which she raised Ground Two as a federal claim.  (Lodgment 8.)  On
16   December 23, 2015, the California Supreme Court denied the petition with a
17   citation to "See *In re Dixon* (1953) 41 Cal. 2d 756, 759." (Lodgment 9.)  The
18   citation to *Dixon* meant that the petition was being rejected because, as a general
19   rule, "habeas corpus cannot serve as a substitute for appeal."

20         Since petitioner had finally exhausted all of her claims, the exhaustion issue
21   became moot.  Accordingly, the Court vacated its earlier Report and
22   Recommendation.  Petitioner filed a First Amended Petition on December 16, 2015.
23   Respondent filed an Answer on May 20, 2016.  Petitioner filed a Reply on
24   August 2, 2016.

25   ///
26   ///
27   ///
28   ///

## SUMMARY OF THE TRIAL EVIDENCE

Based on its independent review of the record, the Court adopts the following factual summary from the California Court of Appeal's decision as a fair and accurate summary of the evidence presented at trial. (Lodgment 4 at 2-5.)

*Prosecution Evidence*

On October 3, 2010, [petitioner] left a barbeque in Paso Robles where she drank several cocktails. On her way home, she drove eastbound and uphill on Serenade Drive in her Pontiac Sunfire. Serenade is a steep, curved road, with a 12 percent grade, and no paint or other markings to designate a center line. Serenade is almost 32 feet wide, with hillside embankments along its north and south curbs.

While moving uphill, the Sunbird collided with the GMC truck Jacob Keller was driving downhill. The GMC overturned and ejected Keller and his passenger, Nolan Martinez. The left rear portion of the GMC landed on Keller. He died at the scene. Martinez, who survived, lay beside the GMC.

Immediately after the collision, Tiana Gomez drove uphill on Serenade with Katelyn Grunow as a passenger. The GMC was in a cloud of dust, with the back of its truck bed against the hillside, at the north curb. The Sunfire faced east, near the south curb, on the westbound side of the road. [Petitioner] was sitting inside. Gomez and Grunow repeatedly yelled and asked her if she had called 911 or the police. [Petitioner] just repeatedly stated, "I was almost home."

Police and fire personnel arrived at the scene around 8:15 p.m. [Petitioner] was outside the Sunbird. She told bystanders she "was just walking by" when she saw it happen, that "they" hit her, and it was not her car. Gomez told [petitioner] she was the one who "did this," and she smelled of alcohol. Gomez showed the officers [petitioner's]

Sunfire, and told them [petitioner] was drunk.  When questioned by officers, [petitioner] initially said she did not know what happened. Then she said she drove by the GMC when it crashed, and did not think it had collided with her car.  The officers saw significant damage on the left side of the Sunfire.  At some point, [petitioner] said the GMC was on her side of the road.  After observing [petitioner's] slurred speech, lack of balance, and odor of alcohol, officers administered field sobriety tests. [Petitioner] failed them.  The officers asked her to take a breath test, and she declined.  She gave a blood sample at a hospital at 9:25 p.m.

Paso Robles police officer Chubbuck examined the GMC and Sunfire at the collision scene.  He testified the Sunfire had a flat left front tire which was shoved toward the back of its wheel well, and the wheel had significant scrapes on its outer rim.  The left rear tire and wheel of the GMC were forced backward, against the wheel well.

Atascadero Police Officer Caleb Davis arrived at the scene at about 2:00 a.m., after the vehicles were towed away.  He examined paint marks made earlier by investigating officers which designated the resting point of each vehicle, as well as visible skid marks, friction marks, and other evidence.  Neither vehicle left pre-impact skid marks on the road.  There was a tire compression skid mark from the Sunfire's flat left front tire.  That mark had two parallel black lines that are sometimes left by the outer walls of a tire when it goes flat.  Davis used a total station device to measure distances, and determined the compression mark was two feet, five inches beyond the center of Serenade, on the GMC's side of the road.[fn]  There were no skid marks from the Sunfire's other tires, which suggested its other wheels were rotating prior to impact.

[fn]     A total station device measures in three dimensions, like a surveyor's tool.   The defense expert and a prosecution investigator used a different measuring device and determined the compression skid mark was about one foot, eight inches, or one foot, four inches beyond the center of Serenade, on the GMC's side of the road.

Davis also inspected both vehicles.  He concluded the Sunfire's left front tire struck the left rear tire of the GMC and their wheel rims locked at the compression mark, the point of maximum engagement (where the vehicles were closest together).   Davis examined the vehicles later, sometimes with the assistance of three members of a California Highway Patrol Multi–Disciplinary Action Investigation team.   In March 2011, they examined the vehicles at the accident scene.   Tow truck operators helped place vehicles at the point of maximum engagement, using the compression skid mark as a reference point.

Davis testified that the physical evidence, including the compression mark, led him to conclude the force of the Sunfire caused the GMC to rotate counter-clockwise, slide sideways, flip, roll over downhill and land upright, against the north hillside.   The Sunfire continued moving uphill, across the westbound lane, until it stopped near the curb on the south side of the road.   Davis opined that [petitioner] caused the collision by driving the Sunfire across the midpoint of the road, into the GMC's side of the road.

During cross-examination, defense counsel asked about the pre-impact position of the GMC.  Davis responded that "[t]he physical evidence doesn't suggest anything."   Counsel asked if one were to

trace the GMC back, extrapolating from its angle at the maximum engagement point, whether the GMC would not have been in the eastbound lane.  Davis responded that it might have been, if the GMC did not turn its wheels, which was not discernable from the physical evidence.

Sandra Rakestraw, a forensic alcohol toxicologist analyzed [petitioner's] blood sample and concluded her blood alcohol concentration was .19 percent at 9:25 p.m. on October 3, 2010.  It would have been higher at 8:25 p.m., and could have been as high as .21 percent.

Keller died at the accident scene as a result of multiple blunt force traumatic head injuries.  His system did not contain any drugs or alcohol.  Martinez survived and received intensive care treatment for six days.  He incurred multiple severe injuries and could not attend school for months.  He suffers from permanent memory impairment and other problems.

*Defense Evidence*

Christopher Gayner testified as an expert for the defense.  He held undergraduate and graduate degrees in mechanical engineering, and had completed specialized courses in accident analysis and reconstruction.

Gayner analyzed the evidence prepared by Davis and other officers.  His testimony emphasized the GMC's center of gravity and the vehicles' first impact, because the center of gravity becomes the vehicle's "pivot point" in a collision.  The first impact occurred precisely at the GMC's center of gravity.  At the point of maximum engagement, the GMC was "at a significant angle to the center line,"

with its nose angled away from the center.  Gayner therefore opined the GMC steered or turned right just before the impact point. Extrapolating backward, he concluded the GMC was on the Sunfire's side of the road two or three seconds before it veered into the Sunfire's front left tire.  The GMC rotated counterclockwise and flipped over because it was turning right prior to impact.  Gayner thus opined the collision resulted because seconds before the impact, the GMC was at least "half of a truck width" into the Sunfire's side of the road.  During cross-examination, Gayner conceded the Sunfire's left front tire compression mark was on the GMC's side of the road.  He also acknowledged that the Sunfire did not reorient between the points of first impact and maximum engagement.

## PETITIONER'S CLAIMS

1.     The trial court erred by failing to instruct the jury about "imminent peril" or "sudden emergency" as to Counts Two and Three.  (First Amended Petition ["FAP"] at 5; First Amended Petition Memorandum ["FAP Mem."] at 9-14; Reply at 7-14.)

2.     The trial court erred in its answer to the jury's second question during deliberations.  (FAP at 5; FAP Mem. at 14-18; Reply at 14-22.)

3.     Cumulative error denied petitioner her right to a fair trial.  (FAP at 6; FAP Mem. at 24-25; Reply at 22-23.)

4.     The evidence presented at trial was insufficient to sustain the convictions.  (FAP at 6; FAP Mem. at 19-24; Reply at 23-24.)

## STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Under the AEDPA, the "clearly established Federal law" that controls federal habeas review of state court decisions consists of holdings (as opposed to dicta) of Supreme Court decisions "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Carey v. Musladin*, 549 U.S. 70, 74 (2006).

Although a particular state court decision may be both "contrary to" and "an unreasonable application of" controlling Supreme Court law, the two phrases have distinct meanings. *See Williams*, 529 U.S. at 391, 413. A state court decision is "contrary to" clearly established federal law if the decision either applies a rule that contradicts the governing Supreme Court law, or reaches a result that differs from the result the Supreme Court reached on "materially indistinguishable" facts. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam); *Williams*, 529 U.S. at 405-06. When a state court decision adjudicating a claim is contrary to controlling Supreme Court law, the reviewing federal habeas court is "unconstrained by § 2254(d)(1)." *See Williams*, 529 U.S. at 406. However, the state court need not cite or even be aware of the controlling Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *See Early*, 537 U.S. at 8.

State court decisions that are not "contrary to" Supreme Court law may be set aside on federal habeas review only "if they are not merely erroneous, but 'an

*unreasonable* application' of clearly established federal law, or based on 'an *unreasonable* determination of the facts.'" *See Early*, 537 U.S. at 11 (citing 28 U.S.C. § 2254(d)) (emphasis added).  A state-court decision that correctly identified the governing legal rule may be rejected if it unreasonably applied the rule to the facts of a particular case.  *See Williams*, 529 U.S. at 406-10, 413 (*e.g.*, the rejected decision may state the *Strickland* standard correctly but apply it unreasonably); *Woodford v. Visciotti*, 537 U.S. 19, 24-27 (2002) (per curiam).  However, to obtain federal habeas relief for such an "unreasonable application," a petitioner must show that the state court's application of Supreme Court law was "objectively unreasonable."  *Visciotti*, 537 U.S. at 24-27; *Williams*, 529 U.S. at 413.   An "unreasonable application" is different from an erroneous or incorrect one.  *See Williams*, 529 U.S. at 409-10; *Visciotti*, 537 U.S. at 25; *Bell v. Cone*, 535 U.S. 685, 699 (2002).  Moreover, review of state court decisions under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits."  *See Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

As the Supreme Court explained in *Harrington v. Richter*, 562 U.S. 86, 102 (2011):

> "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here [i.e., where there was no reasoned state-court decision], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court."

Furthermore, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Richter*, 562 U.S. at 103.

Here, Grounds One, Three, and Four were denied by the California Court of Appeal on direct appeal. Although the Court of Appeal did not directly address Ground Three (cumulative error), the Court must presume that Ground Three was adjudicated on the merits. *See Johnson v. Williams*, 133 S. Ct. 1088, 1094-96 (2013). These three claims then were presented in the Petition for Review, which the California Supreme Court summarily denied. Thus, the California Court of Appeal's decision on direct appeal constitutes the relevant state court adjudication on the merits for Grounds One, Three, and Four. *See Berghuis v. Thompkins*, 560 U.S. 370, 380 (2010) (where state supreme court denied discretionary review of decision on direct appeal, the decision on direct appeal is the relevant state-court decision for purposes of the AEDPA standard of review).

Petitioner's remaining claim in Ground Two was denied by the California Supreme Court solely on a procedural ground. Thus, the Court's review of Ground Two is under a de novo standard. *See, e.g., Tanner v. McDaniel*, 493 F.3d 1135, 1139 (9th Cir. 2007); *Chaker v. Crogan*, 428 F.3d 1215, 1220-21 (9th Cir. 2005); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

## DISCUSSION

**A.    Habeas relief is not warranted with respect to petitioner's insufficiency-of-the-evidence claim (Ground Four).**

In Ground Four, petitioner claims that the evidence presented at trial was insufficient to sustain her convictions because it failed to establish that she was driving on the wrong side of the road before the collision. (FAP at 6; FAP Mem. at 14-18; Reply at 14-22.)

### 1.    Legal Standard.

The Due Process Clause of the Fourteenth Amendment protects a criminal defendant from conviction "except upon proof beyond a reasonable doubt of every

fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970); *accord Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).   Thus, a state prisoner who alleges that the evidence introduced at trial was insufficient to support the jury's findings states a cognizable federal habeas claim. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).   But the prisoner faces a "heavy burden" to prevail on such a claim.   *See Juan H.*, 408 F.3d at 1274, 1275 n.13.   Under *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (italics in original), the question is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

When determining the sufficiency of the evidence, a reviewing court makes no determination of the facts in the ordinary sense of resolving factual disputes. *See Sarausad v. Porter*, 479 F.3d 671, 678 (9th Cir.), *vacated in part*, 503 F.3d 822 (9th Cir. 2007), *rev'd on other grds*, 555 U.S. 179 (2009).   Rather, the reviewing court "must respect the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the jury resolved all conflicts in a manner that supports the verdict."   *See Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995); *see also Jackson*, 443 U.S. at 319, 324, 326.   Thus, in determining the sufficiency of the evidence, "the assessment of the credibility of witnesses is generally beyond the scope of review."   *See Schlup v. Delo*, 513 U.S. 298, 330 (1995); *see also United States v. Lindsey*, 634 F.3d 541, 552 (9th Cir. 2011); *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004) ("A jury's credibility determinations are . . . entitled to near-total deference under *Jackson*.").

Moreover, while "'mere suspicion or speculation cannot be the basis for the creation of logical inferences,'" *see Maass*, 45 F.3d at 1358 (citation omitted), "'[c]ircumstantial evidence can be used to prove any fact, including facts from which another fact is to be inferred, and is not to be distinguished from testimonial evidence insofar as the jury's fact-finding function is concerned,'" *Payne v. Borg*,

982 F.2d 335, 339 (9th Cir. 1992) (citation omitted).  Furthermore, "to establish sufficient evidence, the prosecution need not affirmatively 'rule out every hypothesis except that of guilt.'"  *Schell v. Witek*, 218 F.3d 1017, 1023 (9th Cir. 2000) (en banc) (*quoting Wright v. West*, 505 U.S. 277, 296 (1992) (plurality opinion)).

In post-AEDPA cases, where, as here, a state court has issued a reasoned decision rejecting a claim of insufficient evidence under a standard that is not "contrary to" *Jackson*, a reviewing federal court applies an additional layer of deference.  *See Juan H.*, 408 F.3d at 1274.  A federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees; rather, it "may do so only if the state court decision was 'objectively unreasonable.'"  *Cavazos v. Smith*, __ U.S. __, 132 S. Ct. 2, 4 (2011) (per curiam); *see also Juan H.*, 408 F.3d at 1275 n.13.  This "double dose of deference . . . can rarely be surmounted."  *See Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011); *see also Coleman v. Johnson*, __ U.S. __, 132 S. Ct. 2060, 2062 (2012) (per curiam) ("We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference.").

Thus, a state court's resolution of an insufficiency of the evidence claim is evaluated under 28 U.S.C. § 2254(d)(1), not § 2254(d)(2).  *See Emery v. Clark*, 643 F.3d 1210, 1213-14 (9th Cir. 2011) ("When we undertake collateral review of a state court decision rejecting a claim of insufficiency of the evidence pursuant to 28 U.S.C. § 2254(d)(1), . . . we ask only whether the state court's decision was contrary to or reflected an unreasonable application of *Jackson* to the facts of a particular case."); *see also Long v. Johnson*, 736 F.3d 891, 896 (9th Cir. 2013) ("The pivotal question, then, is whether the California Court of Appeal . . . unreasonably applied *Jackson* in affirming Petitioner's conviction for second-degree murder."); *Boyer*, 659 F.3d at 965 ("[T]he state court's application of the

*Jackson* standard must be 'objectively unreasonable' to warrant habeas relief for a state court prisoner."); *Juan H.*, 408 F.3d at 1275 ("[W]e must ask whether the decision of the California Court of Appeal reflected an 'unreasonable application of' *Jackson* and *Winship* to the facts of this case.") (citing 28 U.S.C. § 2254(d)(1)); *Flores v. Beard*, 533 F. App'x 730, 731 n.1 (9th Cir. 2013) ("Because we 'evaluate a state court's resolution of a *Jackson* sufficiency-of-the-evidence claim in all cases under § 2254(d)(1) rather than § 2254(d)(2),' we do not address [petitioner]'s § 2254(d)(2) argument.") (*quoting Sarausad*, 479 F.3d at 678).

Finally, in adjudicating an insufficiency of the evidence claim, a federal habeas court "look[s] to [state] law only to establish the elements of [the crime] and then turn[s] to the federal question of whether the [state court] was objectively unreasonable in concluding that sufficient evidence supported [the conviction]." *See Juan H.*, 408 F.3d at 1278 n.14 (*citing Jackson*, 443 U.S. at 324 n.16); *Chein v. Shumsky*, 373 F.3d 978, 983 (9th Cir. 2004) (en banc) ("The *Jackson* standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.") (internal quotation marks omitted).

## 2. Analysis.

Petitioner claims that the evidence presented at trial did not establish that she caused the accident by driving on the wrong side of the road just before the collision.  In rejecting this claim, the California Court of Appeal reasoned as follows (Lodgment 4 at 6):

> Each of [petitioner's] convictions required that the prosecution prove she drove on the left half of the roadway in violation of [Cal. Vehicle Code] section 21650.  She was driving the Sunfire.  As the defense expert conceded, the Sunfire left a tire compression mark on the left half of Serenade (the westbound lane).  The prosecution expert opined that the Sunfire was on the left (westbound) side of the road before the

collision.  That evidence supports the inference that [petitioner] was driving on the left side of the road before the collision.

Based on its independent review of the record, the Court concurs that the evidence presented at trial was sufficient for a reasonable jury to conclude that petitioner caused the accident.  The prosecutor could satisfy his burden of proving that petitioner had driven on the wrong side of the road with evidence of marks left on the roadway.  *See People v. Trantham*, 24 Cal. App. 2d 177, 178-80 (1937).  Evidence was presented that petitioner's vehicle left a compression mark that extended for approximately 2.5 feet onto the victims' side of the road.  (10 RT 2894-95; 11 RT 3009-11, 3014.)  Thus, at the point of maximum engagement (i.e., the point at which the vehicles were at their closest), petitioner's vehicle was extended approximately 2.5 feet onto the victims' side of the road.  (11 RT 3016-18.)  Even the defense's expert conceded that petitioner's vehicle had left a compression mark on the victims' side of the road (albeit a less extensive one).  (11 RT 3162-63.)

A reasonable jury also could have concluded that the vehicles first collided on the victims' side of the road.  The prosecutor's expert testified that the point of "maximum engagement" (which was on the victims' side of the road) was very close to the point of "first impact" between the two vehicles:  The distance or time between the first impact and the maximum engagement was "so small," "immeasurable," and "very quick."  (11 RT 3091.)  The prosecutor's expert concluded from the physical evidence that petitioner had caused the accident by driving on the victims' side of the road.  (11 RT 3049-50, 3082.)

From this evidence, a reasonable jury could have concluded that petitioner caused the accident by driving on the victims' side of the road.  Petitioner disagrees, arguing that the defense's expert had greater expertise and a more complete analysis than the prosecutor's expert (FAP Mem. at 20-21).  But it is not the Court's role to second-guess the jury's credibility and factual determinations

when reviewing the sufficiency of the evidence.  *See Bruce*, 376 F.3d at 957.  And although petitioner argues that *all* of the evidence, including the defense evidence, was not properly considered by the jury (FAP Mem. at 24), it is not the Court's role to reweigh the evidence.  *See United States v. Nevils*, 598 F.3d 1158, 1170 (9th Cir. 2010) (*citing United States v. Clutchette*, 465 F.2d 749, 754 (9th Cir. 1972)).  While petitioner's expert presented a theory regarding the pre-collision positions of the two vehicles, the jury did not have to accept this theory.  Rather, the Court must presume that any conflicting inferences from the evidence were resolved by the jury in favor of the prosecution, and defer to that resolution.  *See Jackson*, 443 U.S. at 326.  The prosecution was not required to rule out every hypothesis except that of guilt beyond a reasonable doubt.  *Id.*  Accordingly, the California Court of Appeal's rejection of this claim did not involve an unreasonable application of the *Jackson* standard.

**B.     Habeas relief is not warranted with respect to petitioner's instructional-error claim (Ground One).**

In Ground One, petitioner claims that the trial court erred by failing to instruct the jury about "imminent peril" or "sudden emergency" as to Counts Two and Three.  (FAP at 5; FAP Mem. at 9-14; Reply at 7-14.)

**1.     Legal Standard.**

As a general matter, claims of instructional error are matters of state law and therefore are not cognizable on federal habeas review.  *See Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991) (reiterating that "it is not the province of a federal habeas court to reexamine state court determinations on state law questions"); *Clark v. Brown*, 450 F.3d 898, 904 (9th Cir. 2006) ("The fact that a jury instruction violates state law is not, by itself, a basis for federal habeas corpus relief."); *Miller v. Stagner*, 757 F.2d 988, 993 (9th Cir. 1985) ("Failure to give an instruction which

might be proper as a matter of state law does not amount to a federal constitutional violation.").

In order to merit federal habeas relief on a claim that the trial court erred by failing to properly instruct a jury, petitioner must allege and then show that the trial court committed an error that so infected the entire trial that the resulting conviction violated his federal constitutional right to due process. *See Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988). Claims of instructional error may not be judged in artificial isolation, but must be considered in the context of the trial record and the instructions as a whole. *See Estelle*, 502 U.S. at 72; *Boyde v. California*, 494 U.S. 370, 380 (1990); *see also Cupp*, 414 U.S. at 147; *Ho v. Carey*, 332 F.3d 587, 592 (9th Cir. 2003). In reviewing an ambiguous instruction, the court inquires whether there is a "reasonable likelihood" that the jury has applied the challenged instruction in a way that violates the Constitution. *See Estelle*, 502 U.S. at 72 and n.4.

The omission of an instruction is less likely to be prejudicial than a misstatement of the law. *See Walker v. Endell*, 850 F.2d 470, 475-76 (9th Cir. 1987) (*citing Kibbe*, 431 U.S. at 155). Thus, a habeas petitioner whose claim involves a failure to give a particular instruction bears an "'especially heavy burden.'" *Villafuerte v. Stewart*, 111 F.3d 616, 624 (9th Cir. 1997); *see also Hendricks v. Vasquez*, 974 F.2d 1099, 1106 (9th Cir. 1992).

### 2.   Analysis.

Petitioner contends that the trial court should have instructed the jury on "imminent peril" or "sudden emergency" as to the two counts relating to victim Nolan Martinez:   Count Two (driving under the influence of alcohol or drugs causing injury) and Count Three (driving with a .08 percent blood alcohol concentration or greater causing injury).

The imminent peril/sudden emergency doctrine was in fact a part of the instruction for Count One (vehicular manslaughter while intoxicated), which related only to victim Jacob Keller.  The instruction, CALCRIM No. 591, stated in relevant part:  "A person facing a sudden and unexpected emergency situation not caused by that person's own negligence is required only to use the same care and judgment that an ordinarily careful person would use in the same situation, even if it appears later that a different course of action would have been safer."  (1 CT 177.)

In rejecting petitioner's claim that the imminent peril/sudden emergency doctrine should have been included in the instructions for Counts Two and Three, the California Court of Appeal reasoned as follows (Lodgment 4 at 6-7):

> The court instructed the jury with CALCRIM Nos. 2100 and 2101, the pattern instructions for the 23153 offenses [i.e., Counts Two and Three].  The bench notes for CALCRIM Nos. 2100 and 2101 state that "[o]n request, if supported by the evidence, the court must instruct on the 'imminent peril/sudden emergency' doctrine."

> As the parties acknowledge, the record does not indicate that [petitioner] requested any sudden emergency doctrine instruction as to any offense, or explain why the court included that doctrine in the vehicular manslaughter instructions.  Because the evidence did not support any sudden emergency doctrine instruction, we conclude the court inadvertently included that doctrine in the vehicular manslaughter instructions.  [Petitioner] argues the instruction was supported because the prosecution did not present evidence which established the location of the GMC prior to its impact with the Sunbird, and [petitioner] told the police the GMC was in her lane before the collision.  In so arguing, she ignores or discounts several inconsistent and virtually contemporaneous statements regarding the accident.  Among other things, [petitioner] denied the Sunbird was her

18

1    car, said she was just walking by at the time of the collision, and said

2    she did not know what happened.  The trial court did not err by failing

3    to include the sudden emergency doctrine in the instructions regarding

4    the 23153 offenses.

5

6    At the outset, the California Court of Appeal's determination that, as a matter

7    of state law, the evidence did not warrant an instruction on imminent peril/sudden

8    emergency as to Counts Two and Three does not raise an issue of federal

9    constitutional magnitude.  *See Menendez v. Terhune*, 422 F.3d 1012, 1029 (9th Cir.

10   2005) ("Any error in the state court's determination of whether state law allowed

11   for an instruction in this case cannot form the basis for federal habeas relief.")

12   (*citing Estelle*, 502 U.S. at 67-68); *see also Miller*, 757 F.2d at 993; *Walker*, 850

13   F.2d at 476.  "Quite simply, that should be the final word on the subject."

14   *Menendez*, 422 F.3d at 1029.

15   In any event, in order to raise a claim that is cognizable on federal habeas

16   review, petitioner must show that the omitted instruction so infected the entire trial

17   that the resulting conviction violated her right to due process.  *See Henderson*, 431

18   U.S. at 154.  "In addition, a state trial court's finding that the evidence does not

19   support [the instruction] is entitled to a presumption of correctness on federal

20   habeas review."  *Menendez*, 422 F.3d at 1029 (*citing Hartman v. Summers*, 120

21   F.2d 157, 161 (9th Cir. 1997)).  Petitioner has failed to make the requisite showing

22   here.

23   First, the record is devoid of any evidence that petitioner requested an

24   instruction on imminent peril/sudden emergency, for any of the charges.  As the

25   California Court of Appeal noted, the bench notes for the instruction provide that it

26   is to be given "on request," and if supported by the evidence.  *See also People v.*

27   *Boulware*, 41 Cal. App. 2d 268, 269-70 (1940) (instruction on imminent peril

28   should be provided *on request* if the evidence supports it).  Although petitioner

argues that it should be logically inferred that she did request the instruction (FAP Mem. at 10-11), the record contains no evidence of an actual request by petitioner during trial.

Second, the record does not support petitioner's claim that she was driving on the victims' side of the road *because of* a sudden and unexpected emergency. Petitioner's arguments do not explain why she was on the victims' side of the road at the time of maximum engagement and were belied by her own statements and condition at the scene. There was no evidence that petitioner turned left into the victims' lane in order to avoid a collision.

In sum, petitioner has not rebutted the presumption of correctness afforded to the California Court of Appeal's determination that the evidence did not support an instruction on imminent peril/sudden emergency. In other words, the Court of Appeal's decision "was not error, let alone a violation of due process." *See Menendez*, 422 F.3d at 1030 (rejecting federal due process claim premised on failure to give a defense instruction where the evidence did not support the theory of defense); *Hartman*, 120 F.3d at 161 (same). Accordingly, the Court of Appeal's rejection of this claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law.

**C.    Habeas relief is not warranted with respect to petitioner's claim directed to the trial court's response to the jury's second question (Ground Two).**

In Ground Two, petitioner claims that the trial court violated her constitutional rights by providing an erroneous response to the jury's second question during deliberations. (FAP at 5; FAP Mem. at 14-18; Reply at 14-22.)

**1.    Respondent has not shown that Ground Two is barred by *Teague*.**

Respondent contends that granting habeas relief for this claim would require the creation of a new constitutional rule of criminal procedure, in violation of

*Teague v. Lane*, 489 U.S. 288 (1989).  (Answer Mem. at 12-14.)  Where the state properly raises a *Teague* argument, the Court generally must address it before reaching the merits of petitioner's claim.  *See Horn v. Banks*, 536 U.S. 266, 267 (2002) (per curiam); *Caspari v. Bohlen*, 510 U.S. 383, 389 (1994); *Butler v. Curry*, 528 F.3d 624, 633 (9th Cir. 2008); *Fields v. Brown*, 503 F.3d 755, 770 (9th Cir. 2007).

In *Teague*, the Supreme Court held that "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced."  489 U.S. at 310.  "In general . . . a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government."  *Teague*, 489 U.S. at 301.  Put another way, "a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final."  *See id.*

Respondent contends that granting relief for Ground Two would announce a new rule that would elevate a trial court's error in responding to a jury's question to an error of constitutional dimension.  (Answer Mem. at 12.)  In order to properly raise a *Teague* argument, however, respondent was required to make "particular reference to the appropriate universe of precedent."  *See Arredondo v. Ortiz*, 365 F.3d 778, 781 (9th Cir. 2004).  In the Ninth Circuit, "circuit court holdings suffice" to create an old rule under *Teague*.  *See Leavitt v. Arave*, 383 F.3d 809, 819 (9th Cir. 2004) (per curiam); *Butler*, 528 F.3d at 635 n.10; *Bell v. Hill*, 190 F.3d 1089, 1091 (9th Cir. 1999).  By the time petitioner's conviction became final, the Ninth Circuit had held that a trial judge's failure to properly respond to a jury's question rose to the level of constitutional error.  *See United States v. Southwell*, 432 F.3d 1050, 1055 (9th Cir. 2005); *Beardslee v. Woodford*, 358 F.3d 560, 575 (9th Cir. 2003).  Although the factual circumstances of the trial court's response in these circuit cases are not identical to those in this case, "we do not require the existence of a case for *Teague* purposes involving identical facts, circumstances, and legal

issues." *See Fields*, 503 F.3d at 772 (citation and internal quotation marks omitted).

Respondent has failed to refer to this existing precedent — much less explain why petitioner's claim is barred by *Teague* in spite of it — and Respondent has not shown that Ground Two is barred by *Teague*.

**2.      Ground Two was not exhausted when it was raised in the Petition for Review in the California Supreme Court.**

It is necessary to explain why Ground Two was unexhausted when petitioner completed her direct appeal in the California courts (and therefore required petitioner to later raise the claim in a state habeas petition, which the California Supreme Court denied solely on a procedural ground). As set out in the Court's earlier Report and Recommendation, petitioner failed to fairly present the federal basis of Ground Two in her Petition for Review in the California Supreme Court.

To satisfy the exhaustion requirement, a habeas petitioner must have described in the state court proceedings both the operative facts and the federal legal theory on which the petitioner's claim is based. *See, e.g., Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) ("[F]or purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief."); *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."); *Lyons v. Crawford*, 232 F.3d 666, 670 (9th Cir. 2000) ("[T]he petitioner must make the federal basis [of the claim] explicit either by citing federal law or the decisions of

federal courts, even if the federal basis of a claim is 'self-evident,' or the underlying claim would be decided under state law on the same considerations that would control resolution of the claim on federal grounds."), *as amended by* 247 F.3d 904 (9th Cir. 2001).

When petitioner filed her Petition for Review in the California Supreme Court, the legal basis of her claim that the trial court had given an erroneous response to the jury's question was a state law provision, California Penal Code § 1138.  (Lodgment 5 at 14-15.)  Petitioner did not refer to any specific federal constitutional guarantee, nor did she cite any legal authorities to alert the state court of the fact that she was raising a claim under the United States Constitution. Instead, petitioner cited the following cases:  *People v. Watson*, 46 Cal. 2d 818, 836 (1956); *People v. Eid*, 187 Cal. App. 4th 859, 882 (2010); *People v. Blakeley*, 23 Cal. 4th 82, 99 (2000); *United States v. Anekwu*, 695 F.3d 967, 986 (9th Cir. 2012); *United States v. Frega*, 179 F.3d 793, 809 (9th Cir. 1999); and *Bollenbach v. United States*, 326 U.S. 607, 612-13 (1945).  (Lodgment 5 at 15.)

Although the final three cases — *Anekwu*, *Frega*, and *Bollenbach* — are federal cases, this does not mean that petitioner alerted the state courts to the fact that she was asserting a claim under the United States Constitution.  Petitioner objects that she would have had no reason to cite these federal cases other than to raise a federal claim (ECF No. 25 at 8-10), but the citation of such cases by itself is insufficient.  *See Fields v. Waddington*, 401 F.3d 1018, 1021 (9th Cir. 2005) (petitioner's citation to a U.S. Supreme Court case did not mean he fairly presented the federal constitutional basis of his claim); *Castillo v. McFadden*, 399 F.3d 993, 1001 (9th Cir. 2004) ("Citation of irrelevant federal or state cases does not provide a state court with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim.") (citation and internal quotation marks omitted).

Moreover, these cases merely considered a trial judge's duty to answer questions from the jury, without deciding that issue on federal constitutional grounds. *See Baldwin v. Reese*, 541 U.S. 27, 32 (2004) (noting that one of the ways a petitioner can fairly present the federal constitutional nature of his claim is to cite a case "deciding such a claim on federal grounds"). And it makes no difference that the federal claim that petitioner failed to raise is somewhat similar to the state law claim that she actually raised. *See Anderson v. Harless*, 459 U.S. 4, 6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before the state courts, . . . or that a somewhat similar state-law claim was made."); *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996) ("If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court.").

Petitioner raised two arguments for why Ground Two was properly exhausted in her Petition for Review, but neither established fair presentation. (ECF No. 19.) First, petitioner contended that *Bollenbach* cites other cases that purportedly discuss federal constitutional rights. (ECF No. 19 at 7-8.) However, this would have required the state court to read beyond petitioner's brief to alert it of the presence of a federal claim, which is insufficient to satisfy the fair presentation requirement. *See Baldwin*, 541 U.S. at 32 ("[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief . . . that does not alert it to the presence of a federal claim in order to find material . . . that does so.").

Second, petitioner contended that she raised a federal constitutional claim of cumulative error that also encompassed Ground Two. (ECF No. 19 at 8-9.) However, the two claims — cumulative error and erroneous response to a jury's question — are factually distinct, governed by different legal standards, and would be presented separately. Given these circumstances, petitioner did not fairly present Ground Two merely by raising a claim of cumulative error. *See Gatlin v. Madding*,

189 F.3d 882, 888 (9th Cir. 1999) (petitioner's statement of "cumulative errors" was insufficient to fairly present a due process claim of misidentification).

In sum, Ground Two was unexhausted as of the time petitioner filed her original habeas petition in this Court.


### 3.     Ground Two arguably is procedurally defaulted.

Since Ground Two was unexhausted, petitioner returned to the California Supreme Court in order to raise the claim in a state habeas petition. The California Supreme Court denied the habeas petition with a citation *In re Dixon*, 41 Cal. 2d at 759. (Lodgment 9.) Respondent contends that the California Supreme Court's rejection of the claim under the "*Dixon* rule" means that Ground Two is procedurally defaulted. (Ans. Mem. at 14-18.)

In order for a claim to be procedurally defaulted for federal habeas corpus purposes, "the application of the state procedural rule must provide 'an adequate and independent state law basis' on which the state court can deny relief." *Park v. California*, 202 F.3d 1146, 1151 (9th Cir. 2000). "For a state procedural rule to be 'independent,' the state law basis for the decision must not be interwoven with federal law." *La Crosse v. Kernan*, 244 F.3d 702, 704 (9th Cir. 2001); *Morales v. Calderon*, 85 F.3d 1387, 1393 (9th Cir. 1996) ("Federal habeas review is not barred if the state decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law.'"). In order for a state procedural bar to be "adequate," the state courts must employ a "firmly established and regularly followed state practice." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991).

Under *In re Dixon*, 41 Cal. 2d at 759, habeas corpus cannot serve as a substitute for appeal and absent special circumstances, habeas relief is not available for a claimed error that could have been, but was not raised on direct appeal. In *In re Robbins*, 18 Cal. 4th 770, 811-12 (1998), the California Supreme Court explicitly held that it would no longer consider whether an error alleged in a state habeas

corpus petition constituted a federal constitutional violation. In other words, if the California Supreme Court finds a claim to be procedurally defaulted after *Robbins* was decided, it has done so solely upon state law grounds. *Id.* Here, petitioner's state habeas corpus petition was denied by the California Supreme Court in December 2015, or 17 years after *Robbins* was decided. Accordingly, the California Supreme Court's denial of the petition was necessarily predicated only upon consideration of state law issues, rendering the ruling an independent procedural bar. *See, e.g., Franklin v. Walker*, 2009 WL 5215371, at *5 (E.D. Cal. Dec. 28, 2009) (finding *Dixon* rule to be independent when the default was applied subsequent to the *Robbins* decision), *Report and Recommendation adopted by* 2010 WL 431733 (E.D. Cal. Feb. 2, 2010); *Craft v. Yates*, 2009 WL 3486303, at *5 (E.D. Cal. Oct. 23, 2009) (Tallman, R., Circuit Judge sitting by designation) (same); *Protsman v. Pliler*, 318 F. Supp. 2d 1004, 1006-08 (S.D. Cal. 2004) (same).

Whether the procedural bar imposed was adequate in addition to being independent depends on whether it was "'clear, consistently applied, and well-established at the time of the petitioner's purported default.'" *Robinson v. Ignacio*, 360 F.3d 1044, 1052 (9th Cir. 2004). The Supreme Court has held that California's *Dixon* rule is well-established and regularly followed, and therefore adequate to bar federal habeas review. *See Johnson v. Lee*, 136 S. Ct. 1802, 1805-06 (2016) (per curiam).

Consequently, federal habeas review of Ground Two is barred, unless petitioner can demonstrate cause for his procedural default and actual prejudice as a result of the alleged violation of federal law. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Smith v. Baldwin*, 510 F.3d 1127, 1146 (9th Cir. 2007); *Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003); *Park*, 202 F.3d at 1150. Here, other than raising a general allegation of a due process violation (Reply at 20), petitioner has not purported to make these showings.

The Supreme Court has recognized an exception to the requirement that the petitioner demonstrate both "cause" and "prejudice," where the petitioner can demonstrate that failure to consider the procedurally defaulted claim will result in a fundamental miscarriage of justice because he is actually innocent of the crimes of which he was convicted. *See, e.g., Coleman*, 501 U.S. at 750; *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Smith*, 510 F.3d at 1139; *Noltie v. Peterson*, 9 F.3d 802, 806 (9th Cir. 1993). Here, petitioner has not purported to make this showing of cause and prejudice.

As a result, Ground Two arguably is procedurally defaulted.

**4.      Ground Two fails on the merits in any event.**

       **a.      factual background.**

Petitioner's claim in Ground Two is directed to the trial court's response to the second of the two questions asked by the jury during its deliberations.

The jury's first question was the following: "Is it a logical and reasonable inference that the occupants of the GMC were ejected and the truck's airbags did not deploy because the truck's occupants were not wearing seat belts[?]" (1 CT 283.) The trial court gave the following written response: "This concern was never raised by the parties nor was any evidence presented on this point." (1 CT 285.)

No evidence about seatbelts was presented because the trial court had granted the prosecutor's motion to exclude any seat belt evidence. (1 CT 101; 7 RT 1802.) Under California law, a victim's failure to wear his seat belt is irrelevant to a defendant's criminal responsibility. *See People v. Wattier*, 51 Cal. App. 4th 948, 954-55 (1996).

The jury's second question was the following: "We have reached a verdict on counts 2 and 3 and all 4 special circumstances. We are unable to reach a unanimous verdict (9-3) on count 1 [vehicular manslaughter]. What should we

do?"  (1 CT 287.)   After discussing possible responses with the parties, the trial court gave the following written response to the jury (1 CT 287):

> You're further instructed as follows:  There may be more than one cause of death.  An act causes death only if it is a substantial factor in causing the death.  A substantial factor is more than a trivial or remote factor.  However, it does not need to be the only factor that causes death.
>
> Whether or not Mr. Keller or Mr. Martinez were wearing seat belts is not a fact which should affect your verdict.

### b.     analysis.

Petitioner argued that the trial court's second response went beyond the scope of the jury's question, improperly diverted the jury in order to obtain a verdict, and prevented the jury from finding lack of causation based on the victims' failure to wear seat belts.  Petitioner also argued that the parties should have had an opportunity to make additional arguments about the "substantial factor" concept referenced in the trial court's response.  In rejecting these arguments on state law grounds, the California Court of Appeal reasoned as follows (Lodgment 4 at 9-11):

> In this case, the jury's second inquiry indicated it had reached an impasse.  In that context, the court has multiple options, as described in rule 2.1036 of the California Rules of Court, as follows: "After a jury reports that it has reached an impasse in its deliberations . . . [¶]  If the trial judge determines that further action might assist the jury in reaching a verdict, the judge may: [¶] (1) Give additional instructions; [¶] (2) Clarify previous instructions; [¶] (3) Permit attorneys to make additional closing arguments; or [¶] (4) Employ any combination of these measures."

The trial court acted within its discretion in responding to the jury's second inquiry with the challenged second response, without permitting counsel to argue further.   The second inquiry quickly followed the court's response to the first inquiry regarding the victims' seatbelts.  The court understandably inferred its first response did not eliminate the jury's confusion.   The statements in the challenged response correctly stated the law.  (*People v. Wattier*, *supra*, 51 Cal. App. 4th at pp. 954-955 [victim's failure to wear seatbelt was a preexisting concurrent cause of injury which did not relieve defendant of criminal responsibility].)  The court had already instructed the jury with a version of CALCRIM No. 591 that explained causation.  The substantial factor language in the response was an optional paragraph of CALCRIM No. 591 which the court did not include when it originally instructed the jury.  That language further explained the causation concept.   After considering both inquiries, the court reasonably concluded further instruction was required to help "clear up any instructional confusion expressed by the jury."   (*People v. Gonzalez*, *supra*, 51 Cal. 3d at p. 1212.)

Although this claim is reviewed under a de novo standard, the Court of Appeal's reasoning under state law is illustrative as to why there was no due process violation from the trial court's response to the jury's second question.  As the "governor of the trial," the trial judge had wide discretion in how it would respond to the jury's question, especially where, as here, its eventual response was a correct statement of the law.  *See Arizona v. Johnson*, 351 F.3d 988, 994 (9th Cir. 2003).

The trial court reasonably inferred that the jury had asked the second question because it was continuing to have difficulty with the issue of causation. *See United States v. Walker*, 575 F.2d 209, 213 (9th Cir. 1978) ("[W]e may infer

from questions asked by the jury that it was confused about a controlling legal principle."). Accordingly, the trial court provided a supplemental instruction on the concept of "substantial factor." This response did not exceed the scope or reflect a misunderstanding of the jury's question, nor did it mislead the jury. Petitioner's argument that the trial court's response was erroneous unless there was an explicit statement of "confusion" by the jury is misplaced. (FAP Mem. at 18.) A trial judge's wide discretion in addressing a jury's question necessarily includes wide discretion in framing the response. *See Arizona v. Johnson*, 351 F.3d at 994 ("The court may properly attempt to avoid intrusion on the jury's deliberations by framing responses in terms of supplemental instructions rather than following precisely the form of question asked by the jury.") (*quoting Walker*, 575 F.2d at 214).

The trial court also properly instructed the jury that the victims' seat belt usage was irrelevant as a matter of state law. The California Court of Appeal's determination that this part of the trial court's response, as well as the first part regarding "substantial factor," was correct as a matter of California law is binding on the Court. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam) (a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court on habeas review); *see also Arizona v. Johnson*, 351 F.3d at 993 (trial court did not violate due process in its response to the jury's question in part where the response was an accurate statement of state law).

Finally, the trial court was not required to give the parties an opportunity to make additional legal arguments to the jury in light of its supplemental jury instruction on the "substantial factor" concept. "[I]f a supplemental jury instruction given in response to a jury's question introduces a new theory to the case, the parties should be given an opportunity to argue the new theory." *United States v. Fontenot*, 14 F.3d 1364, 1368 (9th Cir. 1994) (citing cases). However, "[a] supplemental instruction which merely clarifies an existing theory does not

mandate additional arguments." *Id.* The Ninth Circuit's decision in *Fontenot* involved an alleged violation of Federal Rule of Criminal Procedure 30 ("Jury Instructions"), rather than an alleged error of federal constitutional dimension, which has a higher threshold. *See United States v. Dilg*, 700 F.2d 620, 623 (11th Cir. 1983) (a violation of Rule 30 does not necessarily rise to the level of an error of federal constitutional dimension). The reasoning of *Fontenot* nonetheless illustrates why federal habeas relief is unwarranted here. The trial judge's supplemental instruction in this case — which was part of the original jury instruction on causation that had already been given to the jury (1 CT 176-78) — merely clarified the existing concept of causation, rather than introduced a new theory to the case. And nothing in the record suggests that the trial court's language on "substantial factor" was confusing or insufficient to instruct the jury on the issue of causation, so as to warrant additional arguments.

In sum, the trial court's response to the jury's second question during deliberations did not violate petitioner's due process right to a fair trial.

## D.   Habeas relief is not warranted with respect to petitioner's cumulative-error claim (Ground Three).

In Ground Three, petitioner claims that the cumulative error denied petitioner her right to a fair trial. (FAP at 6; FAP Mem. at 24-25; Reply at 22-23.)

As discussed above, however, no constitutional error occurred. Therefore, no accumulation of errors could take place. *See Fairbank v. Ayers*, 650 F.3d 1243, 1257 (9th Cir. 2011) ("[B]ecause we hold that none of [petitioner]'s claims rise to the level of constitutional error, 'there is nothing to accumulate to a level of a constitutional violation.'") (*quoting Mancuso*, 292 F.3d at 957); *Jones v. Stotts*, 59 F.3d 143, 147 (10th Cir. 1995) (noting that cumulative-error analysis evaluates only effect of matters determined to be error, not cumulative effect of non-errors).

**RECOMMENDATION**

IT THEREFORE IS RECOMMENDED that the District Court issue an Order: (1) approving and accepting this Final Report and Recommendation; and (2) directing that Judgment be entered denying the First Amended Petition and dismissing this action with prejudice.


DATED:  September 1, 2016

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE

32